# C. L. Flaccus Glass Company *v.* Brackenridge Borough, Appellant.

*Road law—Plan of lots—Streets and alleys—Opening—Statute of limitations—Act of May 9, 1889, P. L. 173.*

Under the Act of May 9, 1889, P. L. 173, which provides that no street or alley on a plan of lots which has not been opened "for twenty-one years next after the laying out of the same," shall be opened without the consent of the owner of the land, the limitation of twenty-one years begins to run from the actual laying out of the plan, and not from the acknowledging of the plan, nor from the recording of it, nor from the sale of lots. The court may, however, in the absence of other evidence infer and find as a fact that the plan was laid out prior to the date of the acknowledgment.

Argued Oct. 19, 1909. Appeal, No. 74, Oct. T., 1909, by

defendant, from decree of C. P. No. 4, Allegheny Co., Second Term, 1908, No. 34, on bill in equity in case of The C. L. Flaccus Glass Company v. Brackenridge Borough. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction to enjoin the opening of a street.

SWEARINGEN, P. J., filed the following opinion.

This case involves a proceeding on the part of a municipality to open a street, which had been projected upon a plan by a private owner of land. No lot holder in the plan appeared at the trial to demand the opening of the street.

William McAlpin made a plat of his land, showing lots, streets and alleys thereon. He formally acknowledged this plan on January 6, 1887, and on January 10, 1887, he recorded this plan. He then followed this by selling those lots in accordance with his plan, the earliest sale being on April 13, 1887. Under these facts it cannot be doubted that William McAlpin thereby dedicated James street and all other streets and alleys in said plan to public use. By such sale of lots a contract by implication arose between him and the lot purchasers, whereby he undertook that those streets and alleys, including James street, should be forever opened to the public: Woodward v. Pittsburg, 194 Pa. 193. Thereafter, neither William McAlpin, nor anyone claiming under him, could revoke that dedication, unless at least with the consent of every lot holder in the plan; and there is no pretense that any such consent was obtained in this case. It is true the statement is frequently made that such dedication will not be complete until it shall have been accepted by the public. But this refers only to the liability of the public for the maintenance of, or for accidents that might· happen upon, a street so dedicated.

That the dedication of James street, as well as of the other streets and alleys in said plan, was accepted by the public is, we think, clear. There is no necessity to consider whether or

not a township can act for the public in accepting the dedication of highways, because there is no evidence whatever that Harrison township, in any manner, accepted the dedication of the streets in the McAlpin plan. But there is no question that a borough can act for the public in formally accepting the dedication of streets; and it may do this by formal ordinance or resolution, or by unequivocal acts, such as making repairs or improvements. The borough of Brackenridge did, on December 15, 1902, by formal ordinance, adopt a general plan of the borough, which was recorded; and upon this plan appeared the streets and alleys of the McAlpin plan, including James street. It seems to us that this was as much an unequivocal act of acceptance as if the proper borough authorities had repaired drains or constructed culverts on James street.

But however that may be, the said borough did afterwards, by the ordinances mentioned in findings of fact 9, formally accept the dedication of said streets, including James street, the one in dispute. These ordinances were enacted within twenty-one years next after the time when, according to the evidence, the McAlpin plan could have been laid out. And we therefore hold that the acceptance was within time, and that the borough lawfully exercised its power.

If this be true, then the borough of Brackenridge had the lawful right to proceed with the opening of James street, at any time at least after the passage of the ordinance of May 28, 1907, unless it had lost its right by delaying the opening (for it is the opening that controls) until January 9, 1908, by reason of the provisions of the Act of May 9, 1889, P. L. 173. That act is as follows:

"Be it enacted, etc., That any street, lane or alley, laid out by any person or persons in any village or town plot or plan of lots, on lands owned by such person or persons, in case the same has not been opened to, or used by, the public for twenty-one years next after the laying out of the same, shall be and have no force and effect and shall not be opened, without the consent of the owner or owners of the land on which the same has been, or shall be laid out."

The question then is, When did the limitation prescribed in said act begin to run? If it began with the first sale of lots, April 13, 1887, then the borough authorities were in time, when they attempted to open James street on January 9, 1908; if it began with the recording of the McAlpin plan, January 10, 1887, they were in time; but if it began at some time prior to January 9, 1887, then they were not in time. The question when the bar of the statute was intended to be interposed must be answered by ascertaining the meaning of the language, "twenty-one years next after the laying out of" a plan.

It must be borne in mind that we have no evidence showing when the land embraced within the McAlpin plan was surveyed into lots, streets and alleys, the marks placed upon the ground, or when these lots, streets and alleys were marked upon the paper plat. The only evidence we have is that which is disclosed by the record of the plan—the original was not produced—and by the record of the deeds conveying lots in the plan, and the legal inferences to which those records give rise.

It will be observed that the time named in the statute, at which the limitation of twenty-one years is to begin, is not the sale of lots, not the recording of the plan, not the acknowledging of the plan; but the language is "next after the laying out" of the plan. The question then is, When did William McAlpin lay out this plan, within the meaning of the act of 1889? Because this plan and what was done thereunder afford the only evidence we have as to the dedication of James street to public use. So that, if James street was dedicated at all, it was by virtue of the plan of William McAlpin. It has been repeatedly determined that dedication is a matter of intention, that the question of intention is usually one for the jury, and that, when clearly proven, it is as complete in one day as in twenty-one years.

When, then, did William McAlpin lay out this plan? Clearly it must have been at the time when he had fully prepared it, all ready for the use of purchasers of lots and for acceptance of the dedication of streets by the public. It must

have been at the time when he had done some act, from which a jury might reasonably infer that he had laid out the plan. It is true that, until either the public had accepted the dedication, or someone had purchased a lot in the plan, William McAlpin could have revoked his dedication. But it does not follow that he had not actually laid out his plan prior thereto. Even though he should have subsequently revoked the dedication, having still the power to do so, it would not follow that he had not formerly laid it out. He might have formally and effectually laid out his plan and dedicated the streets and never have sold a single lot in it; so that the sale of lots is not the test of the laying out of the plan. In like manner, he need never have recorded his plan; so that recording is not the test. And in the same way, he need never have acknowledged his plan; so that acknowledgment is not the test. The laying out of a plan is a question of fact, and neither the acknowledgment nor the recording of the plan, nor the sale of lots thereunder is necessary to establish the fact. These acts are only evidence of the fact of the laying out of the plan.

William McAlpin made his plan some time, be it long or short, prior to January 6, 1887. When he did so is not disclosed by the evidence. But on that date he did perform an unequivocal act, evidencing his intention. He went before a public officer of the law with his plan, and then and there formally acknowledged it. This was a distinct declaration of his intention to dedicate James street and an equally distinct declaration that he had already laid out his plan. It was no less a distinct declaration than if he had announced the same to a dozen of his neighbors and afterwards had followed his statements with confirmatory acts, as he actually did. Because four days afterwards William McAlpin took this plan to a public office and recorded it, and three months afterwards he sold a lot in accordance with it. He did not lock the plan in his own secretary. But he promptly did those things, from which no reasonable inference can be drawn other than that he had, prior to this acknowledgment on January 6, 1887, actually laid out his plan, and had thereby dedicated James street to public use. If this case had been on

trial before a jury, would it not have been the duty of the
court to submit the foregoing evidence to the jury to find the
fact, whether or not William McAlpin had laid out his plan
on or before January 6, 1887? If such would have been the
court's duty, it is now our duty to find the fact, upon the
same evidence; and we think it is sufficient to sustain the
plaintiff's contention as to the time when the McAlpin plan
was laid out.

We therefore hold that William McAlpin laid out his plan
not later than January 6, 1887, and that the attempt of the
borough of Brackenridge to open James street on January 9,
1908, was more than "twenty-one years next after the lay-
ing out" of the plan. This being true, the bar of the statute
of 1889 had interposed, and the borough of Brackenridge
could not lawfully execute its purposes.

*Nelson McVicar,* of *Kennedy, McVicar & Hazlett,* for
appellant.—The sale of lots by McAlpin according to his plan
showing James street thereon, not previously projected, con-
stituted an irrevocable dedication thereof to public use:
Quicksall v. Philadelphia, 177 Pa. 301; Heckerman v. Hum-
mel, 19 Pa. 64.

The adoption by the borough of Brackenridge in 1902 of
an official plan showing James street thereon the same as on
the plan of McAlpin, and the formal acceptance by ordinances
in 1907 of the dedication of James street and the other streets
on the plan, made James street a public highway: Pittsburg
v. Epping-Carpenter Co., 194 Pa. 318; Yost v. South Bethle-
hem Borough, 4 Lancaster Law Rev. 62; Chester v. Thurlow
Land Co., 13 Pa. Dist. Rep. 285.

The borough of Brackenridge had the right to open James
street to public use at any time within twenty-one years from
the date that the McAlpin plan was recorded: Quicksall v.
Philadelphia, 177 Pa. 301.

The Act of May 9, 1889, P. L. 173, limits the right of a
municipality to open or use a street laid out on a plan to
twenty-one years from the dedication thereof.

There was no limitation of time prior to the Act of May 9,

1889, P. L. 173, on the right of a municipality to accept the dedication of a street laid out on a plan of lots and open the same to public use: Washington Female Seminary v. Washington Borough, 18 Pa. Superior Ct. 555.

James street was dedicated to public use, or offered to the public not earlier than the recording of the McAlpin plan on January 10, 1887: Walters v. Philadelphia, 208 Pa. 189.

*John P. Hunter*, with him *Walter Lyon*, for appellee.—McAlpin having adopted and laid out his plan on January 6, 1887, the bar of the statute begins at that date: Oakley v. Luzerne Borough, 25 Pa. Superior Ct. 425; Scott v. Donora Southern R. R. Co., 222 Pa. 634.

James street being located in a township there was no dedication to public use: Wagner v. Salzburg Township, 132 Pa. 636; Winner v. Graner, 173 Pa. 43; Edge v. Com., 7 Pa. 275.

PER CURIAM, November 5, 1909:

Judgment affirmed on the opinion of the court below.